Justice Scalia,
concurring in part and concurring in the judgment.
I join the Court’s opinion except for its reliance upon two legal fictions. A portion of the Court’s reasoning consists of this: The language in the Fair Debt Collection Practices Act (FDCPA or Act) tracks language in the Truth in Lending Act (TILA); and in the nine years between the enactment of TILA and the enactment of the FDCPA, three Courts of Appeals had “interpreted TILA’s bona fide error defense as referring to clerical errors.” Ante, at 589. Relying on our statement in Bragdon v. Abbott, 524 U. S. 624, 645 (1998), that Congress’s repetition, in a new statute, of statutory language with a “‘settled’” judicial interpretation indicates “ ‘the intent to incorporate its ... judicial interpretations as well,’” the Court concludes that these three Court of Appeals cases “suppor[t] an inference that Congress understood the statutory formula it chose for the FDCPA consistent *607 with Federal Court of Appeals interpretations of TILA.” Ante, at 590.
Let me assume (though I do not believe it) that what counts is what Congress “intended,” even if that intent finds no expression in the enacted text. When a large majority of the Circuits, over a lengthy period of time, have uniformly reached a certain conclusion as to the meaning of a particular statutory text, it may be reasonable to assume that Congress was aware of those holdings, took them to be correct, and intended the same meaning in adopting that text.[1] It seems to me unreasonable, however, to assume that, when Congress has a bill before it that contains language used in an earlier statute, it is aware of, and approves as correct, a mere three Court of Appeals decisions interpreting that earlier statute over the previous nine years. Can one really believe that a majority in both Houses of Congress knew of those three cases, and accepted them as correct (even when, as was the case here, some District Court opinions and a State Supreme Court opinion had concluded, to the contrary, that the defense covered legal errors, see ante, at 589-590, n. 10)? This is a legal fiction, which has nothing to be said for it except that it can sometimes make our job easier. The Court acknowledges that “the interpretations of three Federal Courts of Appeals may not have ‘settled’ the meaning of TILA’s bona fide error defense,” but says “there is no reason to suppose that Congress disagreed with those interpretations.” Ante, at 590. Perhaps not; but no reason to suppose that it knew of and agreed with them either — which is presumably the proposition for which the Court cites them.
*608 Even assuming, moreover, that Congress knew and approved of those eases, they would not support the Court’s conclusion today. All three of them said that TILA’s bona fide error defense covered only clerical errors. See Ives v. W. T. Grant Co., 522 F. 2d 749, 758 (CA2 1975) (“only available for clerical errors”); Haynes v. Logan Furniture Mart, Inc., 503 F. 2d 1161, 1167 (CA7 1974) (“basically only clerical errors”); Palmer v. Wilson, 502 F. 2d 860, 861 (CA9 1974) (“[Clerical errors ... are the only violations this section was designed to excuse”). Yet the Court specifically interprets the identical language in the FDCPA as providing a defense not only for clerical errors, but also for factual errors. See ante, at 594, 599; see also ante, at 595 (suggesting the same). If the Court really finds the three Courts of Appeals’ interpretations of TILA indicative of congressional intent in the FDCPA, it should restrict its decision accordingly. As for me, I support the Court’s inclusion of factual errors, because there is nothing in the text of the FDCPA limiting the excusable “not intentional” violations to those based on clerical errors, and since there is a long tradition in the common law and in our construction of federal statutes distinguishing errors of fact from errors of law.
The Court’s opinion also makes fulsome use of that other legal fiction, legislative history, ranging from a single Representative's floor remarks on the House bill that became the FDCPA, ante, at 590-591, n. 11, to a single Representative’s remarks in a Senate Subcommittee hearing on the House bill and three Senate bills, ibid., to two 1979 Senate Committee Reports dealing not with the FDCPA but with the 1980 amendments to TILA, ante, at 591-592, n. 12, to remarks in a Committee markup of the Senate bill on the FDCPA, ante, at 596, n. 14, to a House Report dealing with an earlier version of the FDCPA, ibid. Is the conscientious attorney really expected to dig out such mini-nuggets of “congressional intent” from floor remarks, committee hearings, committee markups, and committee reports covering many dif *609 ferent bills over many years? When the Court addresses such far-afield legislative history merely “for the sake of completeness,” ante, at 595, it encourages and indeed prescribes such wasteful over-lawyering.
As it happens, moreover, one of the supposedly most “authoritative” snippets of legislative history, a Senate Committee Report dealing with the meaning of TILA, states very clearly that the 1980 amendment to TILA’s bona fide error defense “clarified” the defense “to make clear that it applies to mechanical and computer errors,” S. Rep. No. 96-73, pp. 7-8 (1979). Likewise, the 1999 American Law Report the Court cites, ante, at 591-592, n. 12, which relies on another Senate Committee Report, describes the amendment as clarifying the “prevailing view” that the defense “applies to clerical errors,” Lockhart, 153 A. L. R. Fed. 211-212, §2[a].[2] Once again, the legal fiction contradicts the Court’s conclusion that the language in the FDCPA, identical to the original TILA defense, applies to mistakes of fact.
But if legislative history is to be used, it should be used impartially.. (Legislative history, after all, almost always has something for everyone!) The Court dismisses with a wave of the hand what seems to me the most persuasive legislative history (if legislative history could ever be persuasive) in the case. The respondents point to the Senate Committee Report on the FDCPA, which says that “[a] debt collector has no liability ... if he violates the act in any manner, including with regard to the act’s coverage, when such violation is unintentional and occurred despite procedures designed to avoid such violations.” S. Rep. No. 95-382, p. 5 (1977) (emphasis added). The Court claims that a mistake about “the act’s coverage” in this passage might *610 refer to factual mistakes, such as a debt collector’s mistaken belief “that a particular debt arose out of a nonconsumer transaction and was therefore not ‘covered’ by the Act,” ante, at 595. The Court’s explanation seems to me inadequate. No lawyer — indeed, no one speaking accurately— would equate a mistake regarding the Act’s coverage with a mistake regarding whether a particular fact situation falls within the Act’s coverage. What the Act covers (“the act’s coverage”) is one thing; whether a particular case falls within the Act’s coverage is something else.
Even if (contrary to my perception) the phrase could be used to refer to both these things, by what principle does the Court reject the more plausible meaning? The fact that “attorneys were excluded from the Act’s definition of ‘debt collector’ until 1986,” ibid., does not, as the Court contends, support its conclusion that errors of law are not covered. Attorneys are not the only ones who would have been able to claim a legal-error defense; nonattorneys make legal mistakes too. They also sometimes receive and rely upon erroneous legal advice from attorneys. Indeed, if anyone could satisfy the defense’s requirement of maintaining “procedures reasonably adapted to avoid,” 15 U. S. C. § 1692k(c), a legal error, it would be a nonattorney debt collector who follows the procedure of directing all legal questions to his attorney.
The Court also points to “equivocal” evidence from the Senate Committee’s final markup session, ante, at 596, n. 14, but it minimizes a decidedly unhelpful discussion of the scope of the defense during the session. In response to concern that the defense would be construed, like the TILA defense, as “only protecting against a mathematical error,” a staff member explained that, because of differences in the nature of the statutes, the PDCPA defense was broader than the TILA defense and “would apply to any violation of the act which was unintentional.” See Senate Committee on Banking, Housing and Urban Affairs, Markup Session: S. 1130 — Debt Collection Legislation 20-21 (July 26, 1977) *611 (emphasis added). The chairman then asked: “So it’s not simply a mathematical error but any bona fide error without intent?” Id., at 21 (emphasis added). To which the staff member responded: “That’s correct.” Ibid. The repeated use of “any” — “any violation” and “any bona fide error”— supports the natural reading of the Committee Report’s statement regarding “the act’s coverage” as including legal errors about the scope of the Act, rather than just factual errors. ■
The Court ultimately dismisses the Senate Committee Report on the ground that “the legislative record taken as a whole does not lend strong support to Carlisle’s view.” Ante, at 595-596. I think it more reasonable to give zero weight to the other snippets of legislative history that the Court relies upon, for the reason that the Senate Committee Report on the very bill that became the FDCPA flatly contradicts them. It is almost invariably the case that our opinions benefit not at all from the makeweight use of legislative history. But today’s opinion probably suffers from it. Better to spare us the results of legislative-history research, however painfully and exhaustively conducted it might have been.
The Court’s textual analysis stands on its own, without need of (or indeed any assistance from) the two fictions I have discussed. Accordingly, I concur in the judgment of the Court.

 Of course where so many federal courts have read the language that way, the text was probably clear enough that resort to unexpressed congressional intent would be unnecessary. Or indeed it could be said that such uniform and longstanding judicial interpretation had established the public meaning of the text, whether the Members of Congress were aware of the cases or not. That would be the understanding of the text by reasonable people familiar with its legal context.

 The page cited in the Senate Committee Report does not actually support the American Law Report’s statement. It makes no mention of clarification or judicial interpretations; it merely states that the amendment is intended to “provide protection where errors are clerical or mechanical in nature,” S. Rep. No. 96-368, p. 32 (1979).